***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the Parties at the hearing before the deputy commissioner and in an executed Pre-Trial Agreement dated December 1, 2003, as:
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. Penn National Insurance Company was the compensation carrier on the risk.
6. All of plaintiff's medical records will be submitted as a Stipulated Exhibit.
7. All Industrial Commission forms and filings will be submitted as a stipulated exhibit.
8. Plaintiff's wage would generate the maximum compensation rate available at the time of his alleged injury, $512.00 per week for 1997.
9. Plaintiff's date of injury is August 27, 1997.
10. Following the hearing before the deputy commissioner, the deposition of Dr. George Hadley Callaway, MD, an orthopaedic surgeon at Raleigh Orthopaedic Clinic, was taken and the transcript submitted for inclusion in the record.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the deputy commissioner, plaintiff was 47 years old. Plaintiff has a high school equivalency and completed an Associate's degree in 2001.
2. Plaintiff was the owner and operator of Floors Perfect, a business he started in 1994, which installs carpet, vinyl tile and linoleum. Plaintiff previously did much of the actual installation himself, working about 8 hours per day of which he spent up to 6 hours working on his knees on the floor. Plaintiff performed this type of flooring work for about 10 to 15 years before he started his own business.
3. Plaintiff's job consisted of bringing materials to the job site, then getting on the floor on his hands and knees for scraping, sanding, patching holes or cracks in the floor, laying down glue, laying the tile and/or carpet in place, and cleaning up afterwards.
4. On January 13, 1998, plaintiff was first seen for his knee problems by orthopaedic surgeon, Dr. George Callaway. He reported to Dr. Callaway a history of one to two years of increasing knee pain. Plaintiff was not in acute distress at the time. The x-rays were normal and the physical exam showed a full range of motion in both knees, stable in both planes, with no effusion. Dr. Callaway found some crepitus, a crunching noise behind the kneecaps. Lachman's test and McMurray's test were both negative, indicating there was no cartilage or ligament tear.
5. Dr. Callaway diagnosed plaintiff with bilateral patellofemoral pain, also known as anterior knee pain. Dr. Callaway prescribed Daypro, an anti-inflammatory medication, and sent plaintiff to physical therapy, which should benefit plaintiff by strengthening his inner thigh muscles, which would improve the tracking of the kneecap to be more centralized and less painful. Nevertheless, plaintiff did not take the prescribed medications and did not participate in the therapy. At his February 24, 1998 visit, he reported to Dr. Callaway that he had taken Daypro before and it was not helpful. Dr. Callaway's diagnosis remained bilateral patellofemoral pain. Dr. Callaway released plaintiff to work with the restriction of no kneeling.
6. As of plaintiff's last visit on July 27, 1999 with Dr. Callaway, plaintiff was at maximum medical improvement with a five percent permanent partial impairment to his right knee and a two and one-half percent permanent partial impairment to his left knee. A Form 28B was completed on May 19, 2003 indicating defendants' payment to plaintiff for a 5% permanent partial impairment rating to his right leg and a 2.5% permanent partial impairment rating to his left leg.
7. Plaintiff did not return to see Dr. Callaway or otherwise seek medical treatment for his knees for almost a year until February 18, 1999 when he returned to see Dr. Callaway. At that time Dr. Callaway recommended an MRI. An MRI of plaintiff's right knee showed a defect on the cartilage on the backside of the kneecap and a small cartilage tear on the lateral tibial plateau, permanent changes which Dr. Callaway attributes to plaintiff's work installing flooring, which required him to be on his knees most of the work day. The MRI also showed a small medial meniscus tear, which Dr. Callaway did not attribute to plaintiff's work. Dr. Callaway recommended arthroscopic surgery to repair the medial meniscus tear.
8. In an Opinion filed on February 8, 2001 the Full Commission found plaintiff's patellofemoral pain was causally related to his employment and developed due to the greater risk of such injury from the employment, however, plaintiff's torn meniscus was not a compensable condition.
9. Plaintiff saw Dr. Callaway in January 2001, at which time Dr. Callaway said there had been no improvement in plaintiff's condition. Dr. Callaway last examined plaintiff in May 2003, reiterating his prior diagnosis of patellofemoral pain syndrome, and also noting tenderness on the medial joint line. Dr. Callaway again recommended arthroscopic surgery for plaintiff's right knee in order to repair the non-compensable medial meniscus tear. Dr. Callaway stated that any incapacity for work plaintiff has at present is of the same kind and character as he had in July 1999 when plaintiff had been released to return to work with the restriction of no kneeling and with a five percent permanent partial impairment to his right knee and a two and one-half percent permanent partial impairment to his left knee which has been paid.
10. As a proximate result of his injuries, plaintiff will require future medical care and treatment for the occupational disease affecting both of his knees. However, this treatment does not include the arthroscopic surgery Dr. Callaway recommended, as the purpose of the surgery is to repair the medial meniscus tear, which is a non-compensable injury.
11. In an Opinion filed on February 8, 2001 the Full Commission found plaintiff had failed to prove by the greater weight that he is incapable of work in any employment or that he is capable of some work but has been unsuccessful after making reasonable efforts to locate employment. In fact, plaintiff, without reasonable efforts to locate employment, voluntarily removed himself from the job market and chose to enter community college in the summer of 1998. Plaintiff had not demonstrated that he is incapable of earning wages due to his knee condition.
12. Since November 6, 2002, after obtaining his associates degree from Vance Granville Community College, plaintiff has attempted a variety of jobs. In December 2002 plaintiff found employment as a forklift driver in Zebulon. He remained in that position for two weeks but left because he felt driving the forklift and getting up and down from the forklift aggravated his knees. Subsequently he obtained work for Omega Meats selling meat products door to door. Plaintiff worked in this job for two months but left when he felt the employment aggravated his knees. Plaintiff then operated his own lawn-mowing service for three months, but gave up this employment as he felt it aggravated his knees.
13. In the summer of 2003 plaintiff found employment installing floors with Brock Contracting Services. Plaintiff completed approximately 15 installation jobs.
14. At present, plaintiff is operating his own business selling carpet and tile out of the back of his truck at various work sites. Plaintiff attempts to have a subcontractor install the materials he sells, but he has done some installation work himself. Although plaintiff estimates he has earned $15,000.00 over the past year, there is insufficient evidence submitted by the parties to determine his actual earnings since November 6, 2002.
15. Since November 6, 2002 plaintiff has shown that he is capable of earning some wages; however, there is insufficient evidence of record to determine the amount that he has earned since November 6, 2002.
16. Defendants' defense of and actions in this case have been reasonable and have not been based upon stubborn, unfounded litigiousness.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. In order to establish a change of condition, plaintiff must show conditions different from those present at the time of the prior award. It is not sufficient to show "a continued capacity of the same kind and character and for the same injury." Grantham v. R.G. Berry Corp.,127 N.C. App. 529, 491 S.E.2d 678 (1997), cert. denied, 347 N.C. 671, 500 S.E.2d 86(1998). Edwards v. John Smith Sons, 49 N.C. App. 191,290 S.E.2d 569 (1980), disc. rev. denied, 301 N.C. 720, 274 S.E.2d 228(1981). Plaintiff has not proved he experienced a change of condition as his wage earning capacity was unchanged and any physical incapacity was of the same kind and character as existed at the time of the prior award. N.C. Gen. Stat. § 97-47.
2. As a result of his compensable occupational disease, plaintiff was capable of returning to work earning diminished wages beginning November 6, 2002. Plaintiff is therefore entitled to temporary partial disability benefits beginning November 6, 2002 and continuing for 300 weeks from the date of plaintiff's contraction of an occupational disease on September 9, 1997, at a rate to be determined hereafter. As plaintiff has received 15 weeks of temporary partial disability benefits, defendants are entitled to a credit of 15 weeks for temporary partial disability benefits already paid. N.C. Gen. Stat. § 97-30.
3. Plaintiff is entitled to reasonably necessary medical treatment, related to his compensable occupational disease which tends to effect a cure, provide relief or lessen the period of plaintiff's disability. Plaintiff is not entitled to arthroscopic surgery as the purpose of that surgery is to repair the non-compensable tear to plaintiff's medial meniscus. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
4. Defendants' defense of and actions in this case have been reasonable and have not been based upon stubborn, unfounded litigiousness, plaintiff is not entitled to the award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary partial disability as of November 6, 2002 for 300 weeks from September 9, 1997, the date plaintiff contracted an occupational disease at a rate to be determined; hereafter subject to defendants' credit of 15 weeks for temporary partial disability benefits paid previously. Due to the insufficiency of the evidence, the parties shall confer to determine the rate at which plaintiff shall be paid. All accrued amounts shall be paid in one lump sum. This Award is subject to a reasonable attorney's fee approved in Paragraph 3.
2. Defendants shall pay for all reasonable and necessary medical treatment related to plaintiff's compensable occupational disease that tended or tends to effect a cure, give relief, or lessen the period of plaintiff's disability. Plaintiff's motion to have defendants' pay for the arthoscopic surgery to repair the non-compensable injury plaintiff's torn medical meniscus must be, and is hereby DENIED.
3. Plaintiff's attorney is entitled to a reasonable attorney's fee of twenty-five percent (25%) of the amount owed plaintiff herein. Accordingly, defendants shall deduct twenty-five percent (25%) of the lump sum due plaintiff and forward it directly to plaintiff's counsel of record.
4. Defendants shall pay the costs.
This the 17th day of October 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER